Filed 12/17/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re WILLIAM M.W. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br> WILLIAM W. et al.,<br><br>        Defendants and Appellants. | A156489<br><br>(Alameda County Super. Ct. Nos. JD 029265-01, JD 029266-01) |

We are tasked with determining whether a juvenile court is mandated or permitted to order a county child welfare agency to provide discovery to the parents of dependent minors at no cost in dependency proceedings.  Both William W. (father) and Kathryn M. (mother) appeal from the juvenile court's refusal to order the Alameda County Social Services Agency (Agency) to deliver requested discovery electronically and at no cost in advance of a contested review hearing involving their two young sons, William M.W. (born in 2014) and William Z.W. (born in 2017).  We conclude that no court rule, statute, or constitutional principle requires the discovery order sought by parents in this case.  However, should a circumstance arise where an indigent parent's meaningful access to the judicial process is impaired by discovery requirements, the juvenile court has the authority to fix the time, place, and manner of discovery upon such terms and conditions as will serve the ends of justice and the purposes of the juvenile court law.  Because the juvenile court below incorrectly determined it had no such authority, we remand the matter so that the court may exercise its discretion in the first

instance to decide whether any further discovery order is necessary under the specific facts of this case.

## I. BACKGROUND

In January 2018, the Agency filed a petition alleging that William M.W. and William Z.W. came within the jurisdiction of the juvenile court under subdivisions (b) and (g) of section 300 of the Welfare and Institutions Code[1] due to certain conduct by parents. The petition detailed several domestic violence incidents during which the minors witnessed physical and verbal abuse. There were also substance abuse and mental health concerns raised. In April 2018, the Agency filed an amended petition detaining the minors from both parents. After further amendments to the petition, the court found the allegations true, declared the minors to be juvenile court dependents, formally removed them from parents' care, and ordered reunification services.

In September 2018, parents were notified that the Judicial Council—who selects and pays for attorneys to represent parents in juvenile dependency cases (see Gov. Code, §§ 77003, subd. (a)(4), 77200)—had chosen a new organization to provide legal representation to parents of dependent minors in Alameda County. Specifically, the Judicial Council had entered into a Dependency Representation, Administration, Funding and Training Agreement with East Bay Family Defenders (EBFD). As a result, EBFD attorneys were appointed as substitute counsel for both mother and father, effective September 1, 2018.

In advance of the December 2018 six-month review hearing, the Agency filed a status review report recommending that reunification services continue for both parents. However, in a January 2019 report, the Agency reconsidered, and recommended termination of reunification and referral for selection of a permanent plan. The matter was set for a contested hearing in February 2019.

In advance of the contested hearing, EBFD filed a joint motion to compel discovery, seeking a juvenile court order that copies of relevant discovery be provided by

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified. All rule references are to the California Rules of Court.

2

the Agency to both parents at no cost to them. Father and mother sent letters to the Agency memorializing this request and asking that the discovery be either faxed, provided on a USB flash drive, or produced as printed copies. The Agency, however, refused to comply with parents' request.

The Agency argued that the motion lacked merit because it had fulfilled its discovery obligations by making discovery available to parents for inspection in accordance with its usual protocol. Specifically, attorneys for both parents had been notified that the redacted discovery materials would be ready for their review on February 1, 2019. Once counsel reviewed the discovery and identified the documents they would like duplicated, the Agency was willing to provide copies at a rate of $.10 per page. Parents' counsel was also allowed to take pictures of desired documents or to otherwise copy them using their own supplies without charge by the Agency. The Agency argued that any order by the juvenile court requiring it to expend funds to provide the discovery free of charge to parents was impermissible because no statute authorizes such an order and it would violate separation of powers principles and constitute a gift of public funds.

At the hearing on the parents' discovery matter, parents' counsel asserted that free discovery was required in this case under constitutional principles of due process and equal protection. The Agency maintained that its obligation to disclose did not extend to copying and production of discoverable materials. After argument, the juvenile court denied the discovery motion. It stated that it was denying parents' request because it believed it would otherwise "be acting in excess of its authority given the current state of the statutory law." The court further noted that the Agency had already made the discovery available, but parents' counsel had declined to go to the Agency's office and inspect it. In the court's view, the Agency's obligation under the law was "to make those records available, period, and then counsel can decide on their own if they want to copy the whole file or just one page." Parents' counsel "should get an opportunity to review the discovery and then make whatever copies they need because they know their clients' cases best."

3

Both mother and father timely appealed from the denial of their motion to compel.[2]  In addition, in August 2019, we granted the application of California Juvenile Court Advocates (CJCA) to file an amicus curiae brief in support of parents' position. The Agency filed a responsive brief in October 2019, and the matter is now before us for decision.

## II.  DISCUSSION

### A.  *Requirements of California Rule of Court 5.546*

"Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code." (*In re Chantal S.* (1996) 13 Cal.4th 196, 200.)  Prehearing discovery is primarily regulated in the juvenile court by rule 5.546.[3]  The rule states it is to be "liberally construed in favor of informal disclosures, subject to the right of a party to show privilege or other good cause not to disclose specific material or information." (Rule 5.546(a).)  It requires child welfare agencies to disclose police reports and all favorable evidence to the child, parent or guardian, or their counsel. (Rules 5.546(b), 5.546(c).)  Eight other specified categories of information must be disclosed by the child welfare agency upon "timely request." (Rule 5.546(d).)  "Discovery must be completed in a timely manner to avoid the delay or continuance of a scheduled hearing." (Rule 5.546(i); see rule 5.546(g).)[4]

---

[2] Appellants also challenged the juvenile court's decision via writ petition, which we denied in May 2019 (*J.N. v. Superior Court* (A157076, petn. for writ of mandate den. May 6, 2019)).  The juvenile court's discovery order was made after issuance of the dispositional orders in this case and was therefore directly appealable, making writ review unnecessary. (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 666 ["section 395 grants appellate jurisdiction to review an order denying continuing discovery rendered after 'final judgment' in a section 300 proceeding"]; *In re S.B.* (2009) 46 Cal.4th 529, 532 ["[t]he dispositional order is the 'judgment' referred to in section 395, and all subsequent orders are appealable"].)

[3] Although not relevant to the parents' discovery requests in this case, child welfare agencies also have certain statutory discovery obligations with respect to child's counsel (§ 317, subd. (f)), which we discuss further, *post*.

[4] The Alameda County Superior Court Local Rules, rule 5.506(a) additionally requires that the eight categories of discovery specified in rule 5.546(d) "be disclosed to

4

To ensure compliance with its discovery mandates, rule 5.546 contains several provisions authorizing the juvenile court to regulate the discovery process as needed. For instance, "[i]f a party refuses to disclose information or permit inspection of materials, the requesting party or counsel may move the court for an order requiring timely disclosure of the information or materials." (Rule 5.546(f).) The juvenile court may excise or place limits on the disclosure of privileged or nondiscoverable materials. (Rule 5.546 (g), (h).) The court may issue a discovery order specifying "the time, place, and manner of making the discovery and inspection and may prescribe terms and conditions." (Rule 5.546(i).) Finally, "[i]f at any time during the course of the proceedings the court learns that a person has failed to comply with [the] rule or with an order issued under [the] rule, the court may order the person to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit a party from introducing in evidence the material not disclosed, dismiss the proceedings, or enter any other order the court deems just under the circumstances." (Rule 5.546(j).)

Appellants broadly assert that the Agency's "open file" discovery procedure is burdensome and unreasonable and therefore at odds with its affirmative duty to disclose discovery under rule 5.546, without specifying how the Agency's procedure actually violates any of the requirements set forth in the rule. CJCA's amicus brief takes the position that the term "disclosure" in rule 5.546 should be construed to mean the production and delivery of discoverable material at no cost. The Agency, on the other hand, insists that it can meet its discovery obligations under rule 5.546 by making all discoverable materials available for inspection and copying. We conclude the Agency has the better argument.

The Judicial Council adopted rule 5.546 "under its constitutional and statutory authority to adopt rules for court administration, practice, and procedure that are not inconsistent with statute." (Rule 5.501(b).) Specifically, the Legislature has directed the Judicial Council to "establish rules governing practice and procedure in the juvenile court

all parties, without the need for an informal request, no later than five court days before any contested hearing."

5

not inconsistent with law." (§ 265; see Cal. Const., art. VI, § 6, subd. (d) [giving Judicial Council the power to "adopt rules for court administration, practice and procedure" in order to "improve the administration of justice"].) "The rules have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions." (*In re Richard S.* (1991) 54 Cal.3d 857, 863 (*Richard S.*).) Insofar as they add to existing statutory authority, the rules "must be construed so as to implement the purposes of the juvenile court law." (Rule 5.501(c)(2).)

We independently review interpretations of California Rules of Court, applying the usual rules of statutory construction. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81; *Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 703.) These tenets are well established. " ' "When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body." [Citation.] " 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." ' " (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304; see *MCI Communications Services, Inc. v. Cal. Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 643 [" ' " '[i]f there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs' " ' "]; *ibid.* [in determining plain meaning, the words of a statute " ' "must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible" ' "].) In contrast, " 'if the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the

6

legislative history, public policy, and the statutory scheme encompassing the statute." ' " ' " (*Catlin*, at p. 304.)[5]

Turning to our interpretation of rule 5.546, we note that the ordinary meaning of the word disclose is "to open up," "expose to view," "to make known," "to reveal in words," or to "divulge." (Webster's 3d New Internat. Dict. (2002) p. 645, capitalization omitted.) In *Schaffer v. Superior Court* (2010) 185 Cal.App.4th 1235 (*Schaffer*), the Second District applied this ordinary meaning to Penal Code section 1054.1, a criminal discovery statute which similarly requires the government to "disclose" certain specified categories of discoverable materials to a defendant. The court held that the prosecution can comply with its discovery obligations under Penal Code section 1054.1 "by affording the defendant an opportunity to examine, inspect, or copy the discoverable items." (*Schaffer*, at pp. 1237–1238; see *id.* at p. 1242; Pen. Code, § 1054.1.) We see no reason to reach a different result with respect to the analogous use of the term "disclose" in rule 5.546. Nor do we read Local Rule 5.506(a)'s use of the same term as creating a different level of disclosure not otherwise mandated by the rule of court.

Citing Duhaime's Law Dictionary, CJCA argues that "disclosure" has a specific legal meaning—"the identification and surrendering to the other side of photocopies' of documents" (http://www.duhaime.org/LegalDictionary/D/Disclosure.aspx, as of Dec. 17, 2019)—that should trump the ordinary, lay meaning of the term. (See *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19 [while "courts ordinarily give the words of a statute the usual, everyday meaning they have in lay speech[,] . . . when a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute"].)

---

[5] Appellants have asked us to take judicial notice of the records in a number of cases involving similar issues—*Alameda County Social Services v. J.S.* (A156434, app. pending); *Alameda County Social Services v. O.C.* (A156510, app. pending); *Alameda County Social Services v. D.W.* (A156513, app. pending); and *Alameda County Social Services v. L.G.* (A156749, app. pending). We took the request under submission, to be decided with the merits of this appeal. Other than the record materials in case *Alameda County Social Services v. J.S.*, *supra*, A156434, expressly mentioned by the juvenile court and incorporated by reference into the record in this matter, we deny the request as unnecessary to our decision.

*Arnett* does not support amici's position. The court was tasked with determining whether the word "discovery" in section 1157 of the Evidence Code should be construed according to its ordinary, everyday sense or pursuant to a specific legal definition. After recapping a long history in which the Legislature has used the term "discovery" to describe the "formal exchange of evidentiary information and materials between parties to a pending action," the *Arnett* court concluded it must be given its well-established legal meaning. (*Id.* at pp. 21–24.) CJCA does not trace a similar lineage in the word "disclosure" or cite to any authority that establishes it is a widely accepted legal term of art for the *production* of documents at no cost to a party litigant. Indeed, other legal definitions of the term do not reflect this understanding. (See Black's Law Dictionary (11 ed. 2019) at pp. 585, 583 [defining "discovery disclosure" to require only the "divulging of information to a litigation opponent according to procedural rules" rather than delivery of documents].)

Moreover, the full text of rule 5.546 supports our conclusion that a disclosure obligation is not synonymous with document production. Rule 5.546(b) is titled, "Duty to disclose police reports." That subdivision expressly permits a child welfare agency to either "deliver" the police reports *or* make them "accessible for inspection and copying." (Rule 5.546(b).) Thus, "disclosure" under the rule evinces a broader meaning that includes the option of making materials available for review or turning over paper or electronic copies. Other subdivisions bear out this construction. (See rule 5.546(f) [allowing a party to move the court for a discovery order where another party "refuses to disclose information or permit inspection of materials"]; 5.546(i) [court's discovery order "may specify the time, place, and manner of making the discovery and inspection"]; 5.546(j) [where party has not complied with the rule or the court's discovery order, "the court may order the person to permit the discovery or inspection of materials not previously disclosed"].)[6]

---

[6] CJCA acknowledges that rule 5.546(b) allows for inspection of police reports as a method of disclosure but contends it is the exception to the general rule requiring delivery of discoverable materials. Noting rule 5.546(b)'s use of the word "promptly,"

Finally, had the Judicial Council intended to require something more than simple disclosure under rule 5.546, there are clear examples of how to make that intent explicit. For example, in proceedings for summary dissolution under the Family Code, rule 5.77 provides that, "to comply with preliminary disclosure requirements," joint petitioners "must complete and give each other copies" of certain specified documents. Subdivision (e) of Penal Code section 1054.9 expressly mandates that, if the court orders the prosecution to provide "access" to discoverable materials for certain defendants in connection with postconviction habeas corpus proceedings, the "actual costs of examination or copying" such materials "shall be borne or reimbursed by the defendant."[7] All of these considerations lead us to the conclusion that rule 5.546 requires only an opportunity for inspection of discoverable materials and affords the Agency flexibility in the means by which these records may be made available to requesting parties.

We have no reason to doubt CJCA's assertion that numerous California counties provide discovery to the parents of dependent minors pursuant to rule 5.546 at no cost.

---

CJCA argues that the Judicial Council made an exception for police reports "to ensure they are available at the first opportunity." We are not persuaded. This matter comes before us because of appellants' firm conviction that mandated delivery of discovery would be speedier and more efficient than the Agency's chosen inspection process. That a child welfare agency can comply with its obligation to disclose police reports "promptly" by allowing inspection argues in favor of, rather than against, our construction of the rule.

[7] Although we do not reach the issue, section 317 may provide another example of a provision requiring a specific mode of discovery—i.e., delivery. That statute states that minor's counsel "shall be charged in general with the representation of the child's interests." (§ 317, subd. (e)(1).) To aid in the discharge of this duty, the statute provides that minor's counsel be given access to certain health care records, child custodian records, and "all records relevant to the case that are maintained by state or local public agencies." (§ 317, subd. (f).) It further states that "[a]ll information requested from a child protective agency regarding a child who is in protective custody . . . *shall be provided* to the child's counsel within 30 days of the request." (*Ibid.*, italics added.) Arguably, this broad provision requires that the child welfare agency actually furnish copies of requested materials to minor's counsel. By its terms, however, subdivision (f) of section 317 is not applicable to parents' counsel.

We agree with the Agency, however, that this fact would not establish that the counties have interpreted rule 5.546 as mandating such a procedure.  Rather, their practice is consistent with our construction of rule 5.546, which gives child welfare agencies the option to provide copies of discovery free of charge or for a modest fee.

**B.**     *Due Process Challenge*

Having concluded that the disclosure obligations set forth in rule 5.546 may be satisfied by allowing parents to inspect and copy discoverable materials, we next consider whether constitutional due process principles require a different result.  Appellants contend that, given the fundamental parental rights at stake in dependency proceedings, due process requires that the Agency produce the discovery mandated by rule 5.546 to indigent parents "in the most efficient and cost-effective" way possible.  According to appellants, this means scanning the documents and either emailing them or transferring them to a USB drive.  Appellants assert that the Agency's chosen process is archaic and unreasonable and that efficient access to litigation resources is essential to level the playing field for indigent parents in dependency actions "where the risk of an erroneous decision permanently affects the lives and well-being of children and families."[8]  While we acknowledge the importance of the rights involved, we are simply not convinced that due process in this context requires the electronic transmission of mandated discovery to indigent parents free of charge.

It is beyond debate that the parental rights implicated in dependency proceedings are significant.  "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." (*Santosky v. Kramer* (1982) 455 U.S. 745, 753.)  In an action initiated by the state to terminate parental rights, the private interest at stake is a parent's "fundamental" and "commanding" liberty interest in maintaining a parent-child relationship with the child. (*Id*. at pp. 758–759.)  Indeed, it is

_____

[8] In its amicus brief filed herein, CJCA joins in appellants' due process argument. However, while CJCA argues in favor of provision of mandated discovery at no cost, it "take[s] no position" as to whether a particular mode of transmission is required, so long as it is prompt and informal.

10

precisely because basic civil rights of the parent are at stake that "significant due process safeguards have been built into the dependency scheme [citation], including a right to court-appointed counsel for a parent who cannot afford to retain counsel." (*In re James F.* (2008) 42 Cal.4th 901, 904; see § 317; see also *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 256.) [concluding that the procedure for terminating parental rights in dependency actions comports with due process due to "the precise and demanding substantive and procedural requirements the petitioning agency must have satisfied before it can propose termination"].) All parties who are represented by counsel in dependency proceedings are also statutorily entitled to competent counsel. (§ 317.5, subd. (a); see rule 5.660(d).)

"In addition to these statutory rights, an indigent parent may in some cases have a due process right to counsel where the termination of parental rights may result." (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1659 (*Kristin H.*).) "This is because the parent's interest at the termination of parental rights stage is extremely important; the state shares with the parent an interest in a correct decision; and the risk of an erroneous deprivation of the parent's rights is insupportably high." (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1407.) Moreover, a parent who has established a due process right to appointed counsel in dependency proceedings is also "entitled to effective assistance of counsel; otherwise '*it will be a hollow right.*' " (*Kristin H.*, at p. 1659.) We will assume, without deciding, that a parent has a due process right to effective counsel at a hearing that may result in the setting of a hearing to terminate parental rights, such as the hearing that was pending when appellants made the discovery requests at issue in the instant case.

In the criminal context, our high court has opined: "It cannot be doubted that the right to counsel guaranteed by both the federal and state Constitutions includes, and indeed presumes, the right to effective counsel [citations], and thus also includes the right to reasonably necessary ancillary defense services." (*Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319, fns. omitted.) For an indigent defendant, "[n]ecessary expenses for a criminal defense can include discovery costs, investigative costs, transcript costs, expert fees, etc." (*Schaffer*, *supra*, 185 Cal.App.4th at p. 1245; see Pen. Code,

§ 987.8, subd. (g)(1) [" 'Legal assistance' means legal counsel and supportive services including, but not limited to, medical and psychiatric examinations, investigative services, expert testimony, or any other form of services provided to assist the defendant in the preparation and presentation of his or her case."].)  The defendant bears the burden of showing that an ancillary defense service is necessary.  (*Corenevsky*, at p. 320; see *Schaffer*, at p. 1245 ["A criminal defendant who has established his [or her] indigent status is constitutionally entitled to those defense services for which he [or she] demonstrates a need."].)  However, appellants' attempt to establish a constitutional obligation not around *access* to pertinent records but around their preferred *method* of the discovery procedure must be rejected.

Preliminarily, we note that parents in dependency proceedings are not generally entitled to the same due process protections as criminal defendants.  (See *In re Sade C.* (1996) 13 Cal.4th 952, 982 ["An indigent parent adversely affected by a state-obtained decision on child custody or parental status is simply not a criminal defendant."].)  Dependency proceedings are civil in nature and nonpunitive.  (*Ibid.*)  In the civil context, " ' "[d]ue process requires only that the procedure adopted comport with fundamental principles of fairness and decency." ' "  (*People v. Nelson* (2012) 209 Cal.App.4th 698, 712; see *People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 154 [due process in civil proceedings "is not measured by the rights accorded a defendant in criminal proceedings"].)  Thus, " ' "[t]he due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state *any particular form or method of procedure*." ' "  (*Nelson*, at p. 712, italics added.)  Rather, in testing the fundamental fairness of government decisionmaking, courts balance four relevant factors:  "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them

to present their side of the story before a responsible government official." (*People v. Otto* (2001) 26 Cal.4th 200, 210.)

Here, appellants have the services of appointed counsel, compensated under contract by the Judicial Council, who are charged with their client's effective representation and who have access to all mandated discovery. Although appellants contend that, as indigent parents, they should not be required to bear the cost of obtaining documents necessary to mount a defense in dependency proceedings, they do not, in fact, claim that they have had to bear these discovery expenses themselves. And the record does not disclose what, if any, discovery expenses were incurred. Rather, appellants' due process claim is premised on the notion that the Agency has a constitutional duty to implement more efficient and cost-effective policies. While having to drive to an Agency office to review documents and earmark those for photocopying may be time consuming and indeed "archaic" in this modern age, we fail to see how the possible inconveniencing of parents' counsel implicates fundamental precepts of fairness and decency or deprives appellants of a substantial right.

Even if the specific due process rights afforded to criminal defendants were available to parents in dependency proceedings, due process would not require the electronic transmission of discoverable materials to indigent parents free of charge. As stated above, the appellate court in *Schaffer*, *supra*, 185 Cal.App.4th 1235, rejected a similar argument, opining that the People can comply with Penal Code section 1054.1, the criminal discovery statute, "by affording the defendant an opportunity to examine, inspect, or copy the discoverable items." (*Schaffer*, at pp. 1237–1238.) In making this determination, the court noted that "[b]oth the United States and California Supreme Courts have held that a criminal defendant does not possess a general constitutional right to discovery." (*Id.* at p. 1243.) Rather, due process compels only " 'disclosure' of material evidence favorable to the defendant." (*Ibid.*; see *Brady v. Maryland* (1963) 373 U.S. 83, 87.) Open file discovery policies satisfy this standard. (See *People v. Zambrano* (2007) 41 Cal.4th 1082, 1134–1135 (*Zambrano*) [concluding that the prosecutor's open file policy complied with the prosecution's duty to disclose

13

exculpatory evidence under both the *Brady* rule and the criminal discovery statute], overruled on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *Schaffer*, at p. 1244 [while "the prosecutor is not under an obligation to provide copies," the parties are " 'free to negotiate and agree upon the payment of a fee for copies of discoverable materials' "].)

Although the attorney in *Schaffer* was retained rather than appointed, our analysis does not hinge on this distinction. Several courts have concluded that making discovery available is enough, even when the defendant involved was represented by appointed counsel. In *People v. Garner* (1961) 57 Cal.2d 135, for example, the Supreme Court remarked that the defendant's court-appointed trial counsel "was entitled to inspect, view, hear, or copy any and all statements of defendant" and that "it was the duty of defendant's trial counsel to go to the office of the district attorney and inspect the statements available to him there." (*Id.* at p. 142.) Similarly, in *Joe Z. v. Superior Court* (1970) 3 Cal.3d 797, our high court upheld the right of a juvenile ward represented by the public defender to "inspect and copy" his pretrial statements. (*Id.* at pp. 799, 803.) Finally, the opinion of the Attorney General cited extensively in *Schaffer* found no authority supporting an indigent's right to copies—in addition to inspection—of discoverable materials in the possession of the prosecution. (85 Ops.Cal.Atty.Gen. 123, 127, fn. 7 (2002).) We thus conclude that the open file procedure adopted by the Agency comports with due process as a general matter.

## C. *Equal Protection Claim*

We are similarly unpersuaded by CJCA's argument that the Agency's process for disclosing discovery materials under rule 5.546 violated appellants' federal and state constitutional right to access to the courts.[9] CJCA relies primarily on two United States

---

[9] Although our high court recognizes its authority to construe our state Constitution independently, the "equal protection provisions in the California Constitution 'have been generally thought in California to be substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution.' " (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571, fn. omitted; see *People v. Laird* (2018) 27 Cal.App.5th 458, 469 ["The California equal protection

Supreme Court cases which conclude that equal protection principles are violated when an indigent litigant is denied access to an existing appellate process solely because of an inability to pay for a required transcript of the trial proceedings. In *Griffin v. Illinois* (1956) 351 U.S. 12 (*Griffin*), the court struck down an Illinois rule that effectively conditioned the right to appeal from a criminal conviction on the defendant's procurement of a trial transcript. The Illinois rule challenged in *Griffin* deprived most defendants lacking the means to pay for a transcript of any access to appellate review. "Although the Federal Constitution guarantees no right to appellate review, [citation], once a State affords that right, *Griffin* held, the State may not 'bolt the door to equal justice.' " (*M.L.B. v. S.L.J.* (1996) 519 U.S. 102, 110.) *M.L.B.* extended the holding in *Griffin* to appellate proceedings involving the termination of parental rights. (*M.L.B.*, at pp. 106, 124.) Although civil in nature, the court was convinced that—given the fundamental rights involved—a parent's access to existing judicial processes allowing appeal from a decree terminating parental rights cannot turn on ability to pay mandated record preparation fees. (*Id.* at pp. 106, 116–124.)

    *Griffin* and *M.L.B.* are readily distinguishable from the situation under review because, in those cases, the litigant was denied all access to an established court process based on lack of financial resources. Here, in contrast, appellants have been given access to review the mandated discovery in preparation for their defense, just not in their preferred manner. CJCA appears to argue, however, that once the Agency set up a discovery process that provides copies of discoverable materials contingent upon payment of a fee, it subjected indigent litigants to disparate treatment, blocking them from the full and meaningful access to discovery available to those parents with sufficient funds to obtain copies. We reject this argument, primarily because the constitutional right of indigent parents in dependency proceedings to equal access to the courts has been

---

clause offers substantially similar protection to the federal equal protection clause."].) We will therefore construe the two provisions together. Our review of this constitutional claim is de novo. (*Laird*, at p. 469.)

adequately protected through their statutory and constitutional right to appointed counsel. (§§ 317, subd. (b), 317.5, subd. (a); *Kristin H.*, *supra*, 46 Cal.App.4th at p. 1659.)

We find instructive the precedent discussing the constitutional right of indigent prisoners to meaningful access to courts as civil defendants. "An indigent prisoner who is a defendant in a bona fide civil action threatening his or her personal or property interests has a federal and state constitutional right, as a matter of due process and equal protection, of meaningful access to the courts in order to present a defense." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792, citing *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 203–207 & *Payne v. Superior Court* (1976) 17 Cal.3d 908, 913–919, 924.) Meaningful access to the courts, however, " 'does not necessarily mandate a particular remedy' to secure access." (*Wantuch*, at p. 792; see *Payne*, at p. 923.) Rather, "[t]he trial court determines the appropriate remedy to secure access in the exercise of its sound discretion." (*Wantuch*, at p. 794; see *Yarbrough*, at pp. 200, 207; *Payne*, at p. 927.) Case law suggests a laundry list of remedies to provide access in this context, including "appointment of counsel for the prisoner." (*Wantuch*, at p. 792; see *Yarbrough*, at pp. 200–201.) Indeed, appointment of counsel is viewed as the remedy to be considered when other lesser remedies prove inadequate. (*Yarbrough*, at pp. 200–201 ["In an appropriate case, and as a last alternative, appointment of counsel may be the only way to provide an incarcerated, indigent civil defendant with access to the courts for the protection of threatened personal and property rights."].)

Here, appellants may rely on the services of their court appointed EBFD counsel to manage the preparations for their upcoming review hearing. We have no doubt that— even if counsel did not prefer the Agency's discovery procedure—they would do whatever was necessary to obtain the information needed to zealously advocate for their clients. For this reason, we reject the suggestion that only retained counsel would have the time and incentive to inspect and copy discovery at the Agency's office. In our experience, court-appointed counsel in dependency actions take their duty to effectively represent their clients very seriously. Indeed, in the proceedings below, once the juvenile court denied their motion to compel, parents' counsel immediately requested a

16

continuance so that they could adequately review the discovery with their clients in preparation for the pending review hearing.

Could the Agency have managed to create a more seamless discovery process in service to their young and vulnerable clients and the underlying purposes of the juvenile court law? Almost certainly, as many other counties have done. In finding no equal protection violation on this record, we are not opining on the wisdom of the Agency's chosen procedure. Absent legislative change or an agreement among the stakeholders to adopt a different approach, we hold only that, where counsel is appointed to represent an indigent litigant, the Agency's current discovery policy does not run afoul of state or federal equal protection guarantees. (Compare *People v. Washington* (2019) 34 Cal.App.5th 311, 318–321 [finding no equal protection issue with respect to charging discovery costs to an indigent defendant where a third party, who retained counsel for him under a written agreement, agreed to pay such costs].)

**D.     *The Court Had Authority to Manage Discovery***

Discovery in juvenile matters rests within the control of the juvenile court, and the exercise of its discretion in this context will be reversed on appeal only on a showing of a clear abuse. (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1166.) Had the juvenile court concluded that appellants' requested discovery order was not legally compelled or warranted, we would normally find its denial of appellants' motion well within the bounds of its broad discretion in such matters. However, a court's failure to exercise discretion may itself constitute an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847–848; *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1099.) Here, the juvenile court expressly stated that it did not have the authority to make the requested discovery order. We must therefore determine whether the juvenile court was correct in its belief that it had no discretion to enter an order requiring the Agency to provide discovery to parents at no cost. We conclude the juvenile court misapprehended the scope of its powers.

"The California Constitution divides power equally among three branches of state government: the Legislature (Cal. Const., art. IV, § 1); the executive branch (Cal. Const.,

17

art. V, § 1); and the courts (Cal. Const., art. VI, § 1).  Although there is a certain overlap and interdependence among the three branches, each is constitutionally vested with certain 'core' or 'essential' functions that the others may not perform.  [Citation.] Protection of those core functions is guarded by the separation of powers doctrine and is embodied in a constitutional provision, which states that one branch of state government may not exercise the powers belonging to another branch.  [Citations.]  The purpose of this doctrine is to prevent both the concentration of power in a single branch of government and overreaching by one branch against another." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 176–177 (*Perez*); see Cal. Const., art. III, § 3 ["The powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."].)

"A core function of the judiciary is to resolve specific controversies between parties."  (*Perez*, *supra*, 146 Cal.App.4th at p. 177.)  "The juvenile court is a special department of the superior court whose powers are limited to those granted by the Juvenile Court Law [citation] plus those incidental thereto."  (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 6 (*Ashley M.*).)  "The county's social services agency plays a 'hybrid' role in dependency proceedings, exercising both executive and judicial functions."  (*Id.* at p. 7.)  At times, the social services agency acts as an arm of the court, providing it with essential information.  (*Ibid.*)  At other times, "[i]n providing child welfare services, the county's social services agency acts as an administrative agency of the executive branch, subject to supervision by the State Department of Social Services."  (*Id.* at p. 8.) Moreover, "[t]he internal management of the social services agency is given by statute to the county's director of social services, who acts on behalf of the county's board of supervisors."  (*Id.* at p. 9.)  Based on these respective judicial and executive functions, our First District in *Ashley M.* concluded that "[t]he determination of how best to assign duties to employees and otherwise allocate the agency's resources is not a judicial function and must be left to the agency's own discretion."  (*Ibid.*)  Thus, "the decision to

18

assign specific duties to a particular social worker is not a decision that falls within the realm of the juvenile court's powers." (*Id.* at p. 8.)

Relying on *Ashley M.*, the Agency argues that its decision to partially recoup the cost of copying discovery is an internal policy decision regarding how best to allocate its resources that cannot be disturbed by the juvenile court. We disagree. The purpose of the separation of powers doctrine " 'is to prevent one branch of government from exercising the *complete* power constitutionally vested in another [citation]; it is not intended to prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch.' " (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 298; see *In re M.C.* (2011) 199 Cal.App.4th 784, 807–815 [no separation of powers violation when juvenile court ordered child welfare agency to file dependency petition].) In contrast to the Agency's internal personnel determinations (*Ashley M.*, *supra*, 114 Cal.App.4th at p. 9) or its adjudication of a former dependent's eligibility for AFDC-FC payments (*In re A.F.* (2013) 219 Cal.App.4th 51, 59–60), the juvenile court is vested with the authority to manage discovery in juvenile dependency actions and to adjudicate disputes between parties. The juvenile court discovery rule was adopted pursuant to a constitutional grant of authority and has the force of statute. (See Cal. Const., art. VI, § 6, subd. (d); *Richard S.*, *supra*, 54 Cal.3d at p. 863.) Pursuant to that rule, the juvenile court is authorized to "specify the time, place, and manner of making the discovery and inspection and may prescribe terms and conditions." (Rule 5.546(i).) In addition, the court may enter any order it "deems just under the circumstances" when a party fails to comply with rule 5.546 or a court order issued pursuant to that rule. (Rule 5.546(j).)

Many of the orders routinely and properly made by juvenile courts have incidental financial impacts on child welfare agencies. For example, a juvenile court might require that weekend visitation be provided under the facts of a specific case, even if such an approach imposes greater expense on a child welfare agency. Or the court might order preparation of a supplemental report on a specific issue, thereby requiring a social worker to expend additional time and resources. Similarly, in the discovery context, we conclude

19

the juvenile court is empowered to issue an order that manages the terms and conditions of discovery, and such order would not violate separation of power principles even if it had an incidental effect on the Agency's finances.

We will not here attempt to delineate the scope of the juvenile court's power in this regard. As one example, however, it seems likely that a juvenile court could properly order a child welfare agency to immediately provide copies of relevant discovery at no cost if the agency's implementation of its discovery policy significantly burdened or completely blocked a parent's right to timely discovery under rule 5.546. (See, e.g., *Zambrano*, *supra*, 41 Cal.4th at p. 1134 [acknowledging that an open file discovery policy might raise concerns "if the prosecutor used the policy to impose impracticable or unduly oppressive self-discovery burdens on the defense"].) Moreover, an indigent parent who is proceeding without appointed counsel, or whose meaningful access to the judicial process is impaired by discovery requirements, might be permitted a free, expedited process on constitutional grounds or to advance the purposes of the juvenile court law. (See rule 5.501(c)(2)).) We express no opinion whether any of these circumstances are present in the instant proceedings. However, since the juvenile court believed it had no discretion in this context, we conclude the best course of action is to remand the matter so that the court may consider the particular circumstances of this case and determine for itself whether or not to exercise its discretion to craft a discovery order.

Finally, since we have concluded that, under appropriate circumstances, the juvenile court may make a discovery order that results in incidental additional costs to the Agency, it necessarily follows that such an order would not constitute an improper gift of public funds. "Section 6 of article XVI of the California Constitution provides that the Legislature has no power 'to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation . . . .' The term 'gift' in the constitutional provision 'includes all appropriations of public money for which there is no authority or enforceable claim,' even if there is a moral or equitable obligation." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 450.) "The primary question is whether the money is to be used for a public or a

20

private purpose, and, if it is for a public purpose, it is generally not regarded as a gift within the meaning of this constitutional prohibition." (*San Diego County Dept. of Social Services v. Superior Court* (2005) 134 Cal.App.4th 761, 766 (*San Diego DSS*).)

We have concluded that a discovery order made in an appropriate case which mandates disclosure in a manner requiring an additional Agency expenditure is specifically authorized by rules 5.546(f) and 5.546(i). (See also Cal. Const., art. VI, § 6, subd. (d) [empowering the Judicial Council to "adopt rules for court administration, practice and procedure" in order to "improve the administration of justice"].) Moreover, such a discovery order would be made to advance the purposes of the discovery rule, itself, and the purposes of the juvenile court law generally—purposes we believe are sufficiently "public" to rebut a gift-of-public-funds challenge. (See rules 5.501(c)(2), 5.546(a) & 5.546(i); see also *Payne*, *supra*, 17 Cal.3d at p. 920 ["aiding the judicial process and preserving constitutional rights cannot be deemed a 'gift' "]; compare *San Diego DSS*, *supra*, 134 Cal.App.4th at pp. 766–767 [juvenile court made a prohibited gift of public funds when it ordered the use of county monies to pay independent counsel to investigate the possibility of filing a civil suit on behalf of a dependent minor absent a statute authorizing compensation for such an attorney].)

In sum, the juvenile court has the discretion to issue an order which sets the time, place, and manner of discovery without violating separation of powers principles or improperly gifting public funds. Having failed to exercise its discretion in the first instance, we are obligated to remand this matter to allow the juvenile court the opportunity to do so. We are well aware that dependency proceedings with respect to these young minors have continued in the juvenile court during the time this appeal has been pending, and it may be that current circumstances make any further consideration of this discovery matter unnecessary. Nevertheless, we leave it to the trial court to determine whether any further action must be taken.

### III.  DISPOSITION

The matter is reversed and remanded for further proceedings consistent with the views expressed in this opinion.

_____
Sanchez, J.

WE CONCUR:


_____
Humes, P. J.


_____
Margulies, J.

*A156489  Alameda County Social Services Agency v. William W.*

Trial Court:          Alameda County Superior Court

Trial Judge:          Hon. Charles Smiley

Counsel:

Valerie N. Lankford, by appointment of the Court of Appeal, for Defendants and Appellants.

Boies Schiller Flexner, Maxwell V. Pritt, for California Juvenile Court Advocates as amicus curiae on behalf of Defendants and Appellants.

Donna R. Ziegler, County Counsel, Samantha N. Stonework, Deputy County Counsel, for Plaintiff and Respondent.

*A156489  Alameda County Social Services Agency v. William W.*